IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**KARL KEVIN HILL,**

          Petitioner,

v.

**JOE COAKLEY, Warden,**

          Respondent.

**Civil Action No.: 3:17-CV-94 (GROH)**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On August 3, 2017, Petitioner Karl Kevin Hill ("Petitioner" or "Defendant"), an inmate at Hazelton Satellite Prison Camp, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). ECF No. 1.[1] The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, this Court recommends that the Petition be denied and dismissed without prejudice.

### II. FACTUAL AND PROCEDURAL HISTORY

#### A. Conviction and Sentence[2]

On December 15, 2004, a three count indictment was returned in case number 2:04-CR-30, which charged Petitioner with conspiracy to manufacture and distribute

---

[1] ECF Numbers cited herein refer to case number 3:17-CV-94 unless otherwise noted.
[2] Throughout sections II.A. and II.B., all ECF numbers refer to entries in the docket of Criminal Action No. 2:04-CR-30 from the Northern District of West Virginia.

"crank", possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug crime. ECF No. 1. On February 15, 2005, a superseding indictment[3] was returned which charged Petitioner with: drug conspiracy involving marijuana and methamphetamine in Count 1, in violation of 21 U.S.C §§ 841(b)(1)(B), 846, and 851; possession of a firearm in furtherance of drug crime in Count 2; and which named Petitioner in Forfeiture Allegation 1. ECF No. 23.

In an unpublished per curiam opinion, the United States Court of Appeals for the Fourth Circuit described the facts as follows:

> On September 22, 2004, police officers went to Karl Kevin Hill's home in search of a fugitive. The officers knew that Hill was a convicted felon. Sergeant Cunningham knocked on the front door and announced his presence. When no one responded, he pushed inside, he was met by Hill, who stated that the fugitive had left and refused permission to search the house. Cunningham asked another individual in the house what his name was, and he identified himself. When Cunningham stated that he too was a fugitive, the individual fled toward the back of the house. Cunningham pursued, and during this brief pursuit, he noticed a rifle in plain view.
> While other officers detained the fugitive, Cunningham arrested Hill for being a felon in possession of a firearm. Meanwhile, two officers who had walked behind the house smelled the "chokingly strong" odor of a methamphetamine laboratory coming from a trailer behind the residence. They asked Hill for permission to search his trailer, and Hill said that the trailer did not belong to him, and instead was owned by his sister. Hill told the officers where his sister lived, and they traveled to her home to seek permission to search the trailer. Hill's sister gave written consent, stating that she was the owner of the trailer, and the police officers found an operational methamphetamine laboratory inside.
> Hill moved to suppress items seized during the search of his home and of his sister's trailer. The district court suppressed the items seized from his home, including the firearm, finding that Cunningham improperly entered Hill's

---

[3] The superseding indictment also charged another individual in Count 3 and Forfeiture Allegation 2.

2

> home without a warrant or exigent circumstances. The court denied the motion to suppress evidence found in the trailer, reasoning that Hill had no Fourth Amendment interest in the trailer because he denied ownership or control.
> On April 15, 2005, Hill pled guilty to conspiracy to possess with the intent to distribute marijuana and methamphetamine. Hill was released pending sentencing to permit him to cooperate with the Government in hopes of earning a substantial assistance departure. However, once on release, Hill made no attempts to assist the authorities.
> On February 13, 2006, Hill moved to withdraw his guilty plea, stating that, while in police custody, he had been denied medical assistance for his serious knee injury. Because the Government had informed him that, if he pled guilty, they would not oppose his motion for bond, Hill pled guilty in order to be released from prison and seek medical attention. Thus, he claimed that his plea was coerced and given under duress.

ECF No. 158-2 at 2 - 4. On April 15, 2005, when Petitioner entered his plea of guilty to Count 1 of the superseding indictment, Count 2 and the forfeiture were dismissed. ECF Nos. 59, 60, 88.

Petitioner's February 13, 2006, motion to withdraw his guilty plea was filed on the same date that Petitioner's counsel moved to withdraw from representing Petitioner. The motion to withdraw asserted that there was an irreparable breakdown in the attorney client relationship. ECF Nos. 75, 76. On February 15, 2006, the United States filed an objection to Petitioner's motion to withdraw his guilty plea. ECF No. 77. On February 23, 2006, the Court appointed new counsel to represent Petitioner. ECF No. 82. On April 4, 2006, Petitioner filed an affidavit and documents in support of his motion to withdraw his guilty plea. On May 9, 2006, the presiding Magistrate Judge held a hearing on Petitioner's February 13, 2006, motion to withdraw his guilty plea. ECF Nos. 117, 122. On June 7, 2006, the Magistrate submitted a Report and Recommendation that recommended Petitioner's motion to withdraw his guilty plea be denied. ECF Nos.

3

119.

On June 30, 2006, the District Court entered an order which adopted the Report and Recommendation, and which thoroughly examined and rejected Petitioner's claims. ECF No. 122 at 4 - 6. On October 2, 2006, a Presentence Investigation Report ("PSR") was filed with the Court. ECF No. 133. Petitioner's PSR stated in part that during the law enforcement search, "[b]ack at the house, approx[imately] 250 grams of marijuana and several guns were found in the defendant's bedroom. More weapons were found in a wash room, and one of the shotguns was loaded." ECF No. 133 at 7, ¶ 36. The PSR further stated that under the "specific offense characteristic" section that, "[t]he defendant possessed firearms. Therefore, pursuant to U.S.S.G. §2D1.1(b)(1), a 2 level increase is recommended." ECF No. 133 at 11, ¶ 55. The PSR notes that the "minimum term of imprisonment is 10 years and the maximum term of imprisonment is life." ECF No. 133 at 20, ¶ 95[4]. On October 2, 2006, the Court adopted the PSR without change, and sentenced Petitioner to 120 months of incarceration, the minimum term of imprisonment. ECF Nos. 133-1, 131.

On October 8, 2006, Petitioner filed a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit in that Court's case number 06-5068. ECF No. 135. On August 15, 2007, the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's conviction in an unpublished per curium opinion. ECF Nos. 155, 158, 158-2.

---

[4] The PSR further notes that although Petitioner's Guideline range for imprisonment was 28 – 97 months, "pursuant to U.S.S.G. § 5G1.1(b), where a statutory[il]y required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." ECF No. 133 at 20, ¶ 96.

4

### B. Petitioner's Motion to Vacate Under § 2255

On April 16, 2008, Petitioner filed a pro se motion to vacate under 28 U.S.C. § 2255. ECF No. 160. Following the filing of additional pleadings by the Petitioner and Respondent, on October 28, 2009, a Report and Recommendation was filed by United States Magistrate Judge John S. Kaull, which recommended the motion to vacate be denied and the case dismissed with prejudice. ECF No. 198. On March 26, 2010, the Magistrate Judge's Report and Recommendation was adopted by United States District Court Judge John Preston Bailey. ECF No. 207. On April 2, 2010, Petitioner filed a notice of appeal of Judge Bailey's order to the United States Court of Appeals for the Fourth Circuit, in that court's case number 10-6500. ECF No. 209. On August 30, 2010, the United States Court of Appeals for the Fourth Circuit denied Petitioner a certificate of appealability and dismissed his appeal in an unpublished per curiam opinion. ECF Nos. 224, 225.

### C. Petitioner's First Petition for Habeas Corpus Under § 2241[5]

On December 23, 2011, Petitioner filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 in case number 1:11-CV-206. ECF No. 1. Petitioner asserted that his conviction was based on fraud, misrepresentation and false testimony. ECF Nos 1, 5 at 5. On January 19, 2012, the presiding United States Magistrate Judge issued a Report and Recommendation that the petition be denied and dismissed with prejudice. ECF No. 9. On October 10, 2012, the District Court entered an "Order Adopting in part the Report and Recommendation", which denied the § 2241 petition, denied as moot Petitioner's motion to supplement the record, and dismissed the matter without

---

[5] Throughout section II.C., all ECF numbers refer to entries in the docket of Civil Action No. 1:11-CV-206 from the Northern District of West Virginia.

prejudice. ECF No. 13.

### D.     Prison Administrative Proceedings

Petitioner is currently incarcerated at Hazelton USP in Bruceton Mills, West Virginia with a projected release date of October 16, 2020. On February 28, 2017, Petitioner was placed on the waiting list for the Residential Drug Abuse Program ("RDAP"). ECF No. 14-2 at 47. On March 24, 2017, it was determined that Petitioner was ineligible for early release pursuant to 18 U.S.C. § 3621. Id. On June 20, 2017, when Petitioner became eligible to enroll in RDAP, he declined the treatment. Id.

Petitioner contends that he initiated the internal grievance procedure at Hazelton, to address the issues asserted in his current petition, but explains, "[t]he process was started and abruptly stopped as being futile since RDAP administrator referred petitioner to unchangeable published policy." ECF No. 1 at 7, ¶ 14.A.1. Petitioner asserts that "futility thereby excuses [him] from being obligated to exhaust." ECF No. 9 at 3. Petitioner explains why he believed administrative remedies were futile:

> [RDAP administrator] Dr. Humy was very clear in her reasoning in denial of Hill's request for earlier release, once he completes the intensive drug treatment program (RDAP). In clarification, Dr. Humy said, "Please remember being eligible for RDAP is separate from your earlier release eligibility. Many individuals are eligible for RDAP but are not eligible for early release. Policy indicates that regardless of the reasons why you were in possession of the guns, just having been convicted of the gun charge will automatically prevent you from being eligible for early release.

ECF No. 9 at 4. Petitioner provides no documents to support his claim that he instigated an internal grievance or other administrative remedy related to his instant claims. Respondent provides administrative remedy records which show that Petitioner

6

has filed at least 24 administrative remedies[6] related to his medical care and other issues, but no administrative remedies related to his claims raised herein.

### E. Instant Second Petition for Habeas Corpus Under § 2241

Petitioner asserts two grounds for relief in his instant second petition for habeas corpus under § 2241: (1) Petitioner challenges the execution of his sentence because the Bureau of Prisons has misinterpreted the law and thereby improperly calculated his eligible sentence reduction; and (2) Petitioner asserts that he received ineffective assistance of counsel in relation to his criminal conviction and that a newly-issued case from the Supreme Court of the United States supports raising this argument for the first time in a § 2241 proceeding. Petitioner requests that: (1) the Court order the BOP to grant Petitioner one year of sentence reduction when he completes the Residential Drug Abuse Program (RDAP); and (2) he be "granted additional remedy because counsel was ineffective". ECF No. 1 at 8. On December 21, 2017, Respondent filed a Motion to Dismiss or, in the alternative, for Summary Judgment and memorandum in support thereof. ECF Nos. 14, 14-1. Following the January 3, 2018 issuance of a Roseboro notice, on January 29, 2018, Petitioner filed a response to the motion to dismiss. ECF No. 18. Also on January 29, 2018, Petitioner filed a Notice of Interlocutory Appeal. ECF No. 19. The case was filed with the United States Court of

---

[6] Petitioner filed the following administrative remedies related to his medical treatment: (1) 536330-F1 on April 28, 2009; (2) 536330-R1 on May 26, 2009; (3) 536330-A1 on February 17, 2010; (4) 609883-F1 on October 4, 2010; (5) 609883-F2 on October 7, 2010; (6) 609883-R1 on November 10, 2010; (7) 609883-A1 on April 20, 2011; (8) 609883-A2 on May 16, 2011; (9) 609883-A3 on June 22, 2011; (10) 670545-F1 on December 29, 2011; (11) 670546-F1 on December 29, 2011; (12) 670546-F2 on January 4, 2012; (13) 670546-R1 on February 6, 2012; (14) 675234-F1 on February 7, 2012; (15) 675234-R1 on March 19, 2012; (16) 670546-R2 on March 19, 2012; (17) 670546-R3 on April 23, 2012; (18) 675234-R2 on April 23, 2012; (19) 670546-A1 on April 30, 2012; (20) 675234-A1 on April 30, 2012; (21) 675234-A2 on July 9, 2012; and (22) 670546-A2 on July 9, 2012. Petitioner also filed two additional administrative remedies: (1) 784343-F1 on June 25, 2014; and (2) 784343-R1 on August 4, 2014. ECF No. 14-2 at 35 – 45.

Appeals for the Fourth Circuit in that Court's case number 18-6100. ECF No. 22. On February 12, 2018, Respondent filed a reply to Petitioner's response. ECF No. 23. On February 23, 2018, Petitioner filed a motion for clarification. ECF No. 24. On April 2, 2018, the United States Court of Appeals for the Fourth Circuit dismissed the interlocutory appeal for failure to prosecute. ECF Nos. 25, 26.

### III.  STANDARD OF REVIEW

#### A. Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, the undersigned is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts; see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

#### B. Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is

without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d) is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### C.  Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's

9

obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a

10

claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### D. Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a

11

party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV. ANALYSIS

### A. Petitioner Fails to Present a Case or Controversy

This Court lacks jurisdiction to address Petitioner's claims because he does not present an active case or controversy. The Constitution specifies that judicial power extends only to "Cases" and "Controversies," Art. III, § 2. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006); Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997).

In Spokeo, Inc. v. Robins, __ U.S. __, 136 S. Ct. 1540 as revised (May 24, 2016), the Supreme Court addressed the necessity of standing to demonstrate a case or controversy is present:

> Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood. The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. In this way, "[t]he law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches," and confines the federal courts to a properly judicial role. Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff

must "clearly ... allege facts demonstrating" each element. 136 S. Ct. at 1547, as revised (May 24, 2016) (internal citations omitted). "Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017) quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 38 (1976)

Petitioner asks the Court to "order the BOP to grant petitioner one year of sentence reduction when he completes [ ] the RDAP drug abuse treatment program." ECF No. 1 at 8. Petitioner acknowledges that he has not completed RDAP. Id. Respondent has presented evidence that on June 20, 2017, Petitioner refused to even enroll in RDAP after learning he would not be eligible for early release. ECF No. 14-2 at 47. It appears that Petitioner has failed to demonstrate he has standing to proceed in this action because he cannot meet any of the three parts of the Spokeo test. First, Petitioner cannot show that he suffered an injury in fact, because he has not completed the RDAP program which he claims would entitle him to early release. Second, Petitioner cannot show this his alleged injury is fairly traceable to the challenged conduct of the defendant because Petitioner has declined to participate in the program which, if he is eligible, would entitle him to early release. Third, Petitioner cannot show this his alleged injury is likely to be redressed by a favorable judicial decision. The law cited by Petitioner does not support his claims. For all of these reasons, it appears to the Court that because Petitioner lacks standing there is no case or controversy before the Court. Accordingly, the Court is without jurisdiction to consider Petitioner's claims and should dismiss his petition.

## B.    Petitioner Failed to Exhaust Administrative Remedies

An inmate who seeks formal review of an issue related to any aspect of his confinement must follow the administrative review process set forth in 28 C.F.R. 542 et seq. 28 C.F.R. § 542.10(a). An inmate must first attempt informal resolution with prison staff. 28 C.F.R. § 542.13. If the prisoner achieves no satisfaction through attempted informal resolution, he must submit a Request for Administrative Remedy with the warden. Id. An inmate who is not satisfied with the Warden's response must next submit an appeal to the appropriate Regional Director. 28 C.F.R. § 542.15. If the prisoner is dissatisfied with the decision of the Regional Director, he may make a final appeal to the office of the General Counsel. Id.

The petitioner acknowledges that he did not administratively exhaust his claim, writing, "[t]he process was started an abruptly stopped as being futile." ECF No. 1 at 7. Although some courts have used futility to excuse an inmate's failure to exhaust his administrative remedies[7], Petitioner herein has provided no authority to excuse his failure to exhaust his administrative remedies before challenging a denial of early release under the RDAP. Petitioner's failure to exhaust administrative remedies deprives this Court of subject matter jurisdiction.

## V.    RECOMMENDATION

For the foregoing reasons, this Court concludes that no genuine issues of material fact are present, and that the Respondent is entitled to judgment as a matter of law. Accordingly, this Court **RECOMMENDS** that Respondent's Motion for Summary

---

[7] For instance, some district courts have found that requiring inmates to challenge the BOP's policy regarding calculation of good conduct time through the administrative process would be futile. See, e.g., Hendershot v. Scibana, 2004 WL 2009241 (W.D.Wis. 2004) and Martinez v. Wendt, 2003 WL 22456808 (N.D.Tex. 2003) (Mag. Report and Recommendation), adopted by 2003 WL 22724755 (N.D.Tex. 2003).

Judgment [ECF No. 14] be **GRANTED** and the petition [ECF No. 1] be **DISMISSED WITHOUT PREJUDICE**.

This Court further **RECOMMENDS** that the Petitioner's "Motion for Clarification" [ECF No. 24] be terminated as **MOOT**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the District Court. The Clerk is directed to terminate the Magistrate Judge association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:** April 20, 2018

*Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE